UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

D-1 RONNIE GLENN STOCKTON, JR.
D-6 ROBERT EARL VINSON,

        Defendants.

_____/

Case No. 05-80386

HON. GEORGE CARAM STEEH

## OPINION AND ORDER DENYING MOTION TO SUPPRESS

### INTRODUCTION

Defendant Stockton (one of six defendants in this case), charged with conspiracy to possess with intent to distribute marijuana under 21 U.S.C. § 841, has moved to suppress both observations made by DEA Agent Shawn Jennings and the evidence seized as a result of those observations. Defendant Vinson (D-5) filed a notice of his joinder in this motion[1].

### BACKGROUND

On April 12, 2005, Illinois police officers stopped a tractor trailer driven by a Jaime Robles at a weigh station in Illinois. The truck contained about 1000 pounds of marijuana. Robles agreed to cooperate with law enforcement and deliver the marijuana as planned. Robles was ultimately instructed to deliver the marijuana to a business

---

[1] Because counsel for Vinson conceded a lack of standing to make this motion at the hearing, the court will deny the motion as to Vinson on this basis.

called Dearborn Fleet Service, owned by defendant Ronnie Stockton and located on leased property on Allen Road in Brownstown, Michigan.

DEA Agent Jennings, the government's sole witness, testified to the following at an evidentiary hearing on the motion to suppress held August 17, 2005. He conducted undercover surveillance on the tractor trailer the morning following the discovery of the marijuana by Ohio authorities, April 13, 2005. Agent Jennings was driving an unmarked car ahead of the tractor trailer on Allen Road at the time the vehicles reached the address of Dearborn Fleet Service, approximately 10:30 a.m. He did not recollect whether signs at that address included one for "Dearborn Fleet Service." Coincidentally, Jennings turned into the very drive of the intended delivery address ahead of Robles, and proceeded from the east to the west down the drive, through an open gate, and around the north and west sides of the building on a two-track drive into a semi-wooded area on the south side of the building. Robles' truck followed, and stopped on the east side of the building. Once Robles' truck came through the gate, it was closed and padlocked behind him.

Jennings stated that a line of trees separated him from the building and truck, which were located approximately 75-100 yards away. He stated that he could see defendant Stockton in or around the trees, wearing a red hat, and testified that it appeared Stockton was talking on a cell phone. He also witnessed other individuals on the property, not all of whom were involved in the off-loading of the truck. In fact, one individual approached Jennings' car and asked what he was doing, to which Jennings told the man his identity and required that the man stay with him. He testified that from his vantage point, at a lower-lying portion of the property, he could see only the top half

of the truck, and watched the rear doors being opened. When he informed his superior of the truck's location and that the rear doors had been opened, a "take-down" occurred, resulting in the arrest of six individuals by DEA officers. Warrants were neither sought nor secured prior to the arrests.

The defense called two witnesses, Roderick Bethea and Gary Sumeracki. Bethea worked for a repossession business called Diversified Recovery which, as of April 13, 2005, leased and occupied parking/storage space on the premises of Dearborn Fleet Service, at the rear (or west side) of the property. As of May 2005, the business no longer rented any space at that address. Bethea testified that prior to April 13, 2005, after his business had suffered a theft, he requested that the premises be secured. After that time, the gate, located approximately 100-150 feet from Allen Road, was "always" locked, according to Bethea, and attached to that gate was a sign which stated in large letters "KEEP OUT/NO TRESPASSING."

The defense used the testimony of Gary Sumeracki, a private investigator, to introduce a sketch and 12 August 2005 photos of the property, which are discussed as necessary in the analysis section, below.

## ANALYSIS

Defendants move to suppress Jennings' observations (and the resulting evidence) under the Fourth Amendment, on the basis that this warrantless search and seizure was unconstitutional. Such a claim requires the court to determine whether a right exists under the Fourth Amendment, and where a right does exist, whether the search and seizure were reasonable. The only issue to be determined by this motion is whether defendants had a reasonable expectation of privacy under these

circumstances, which was violated, rendering the subject search and seizure unconstitutional.  See Katz v. United States, 389 U.S. 347, 351-52 (1967).  Defendants assert that both their business area and its curtilage are entitled to protection under the Fourth Amendment, that Jennings was a trespasser (defendants point out there was a "no trespassing" sign at the business location), and that the defendants' behavior had no intrinsic "incriminating character."

In response, the government asserts that businesses do not enjoy the same rights of privacy as do homes.  The government argues that Jennings was in a "parking" area of the business when he made the observations, which is disputed by defendant.  The government relies on Sixth Circuit precedent, asserting that areas adjacent to commercial premises have no curtilage protection, immunizing Jennings' actions.  The government cites to United States v. Elkins, 300 F.3d 638 (6th Cir. 2002), which involved the government's appeal from a district court order suppressing evidence of a marijuana growing operation found in buildings owned by the defendants.  The Sixth Circuit reversed the district court, finding that the police lawfully observed marijuana plants in the building by looking through a gap around a PVC pipe protruding from the wall of the building, and that a warrantless entry into the building was justified to prevent destruction of evidence, as exigent circumstances existed.  Defendants note that the Elkins court explicitly held that "even if 'business curtilage' is a viable doctrine in this Circuit, it does not apply here," Id. at 654, and that the path next to the apartment

building, the subject property in the Elkins case, was a place the police officers could legitimately enter under the "open fields" doctrine, which is not at issue here.[2]

The government also relies on United States v. Diaz, 25 F.3d 392 (6th Cir. 1994), where it was held that a guest of a motel had no "reasonable expectation of privacy" in the motel parking lot, and that drug agents were permitted to use a trained dog to sniff drugs without implicating the Fourth Amendment. Defendants distinguish Diaz, asserting that Agent Jennings in the case at bar did not park in a "public parking area," and that defendant's business does not have a parking lot open to the public as did the motel in Diaz.

The court finds the area Agent Jennings used to observe the offloading of drugs was not fully open to the public as was the motel parking lot. However, the shared occupancy with Mr. Bethea's business necessarily obviates any real, reasonable expectation of privacy, and the court must deny defendants' motion to suppress. Important to this court's determination is that Jennings was able to drive, unimpeded, through an open gate ahead of Robles on his way to his ultimate place of observation on the south side of the building. The parties appear to agree that there was a large "KEEP OUT/NO TRESPASSING" sign on the gate, but defendant offered no conclusive proof to demonstrate that a large sign at a nearly right angle to an oncoming car would make the same impression on a driver as a "KEEP OUT/NO TRESPASSING" sign on a

---

[2] In this context, defendants also discuss United States v. Swart, 679 F.2d 698 (7th Cir. 1982), a case which reversed the district court's denial of a suppression motion and remanded the case for a new trial, and ruled that only if the cars subject to search (located near sheds and a garage of a closed business) were not within the business curtilage, or within an area then closed to the public, would the district court judge be correct in denying a renewed suppression motion.

locked gate. Furthermore, there was no evidence offered about similar signs elsewhere on the property.[3]

It is critical to this court's determination that the premises in question were occupied by more than one business as of April 13, 2005.[4] On that date, both defendant Stockton's business as well as some portion of Diversified Recovery's business were located on the premises. Both businesses had full access to and use of the property surrounding the building. Bethea had a key to the padlock, and in fact, Roderick Bethea testified that the lock on the gate was added at his request. For these reasons, it occurs to the court that neither business could have a reasonable expectation of privacy absent some system worked out between the businesses about the opening of the gate, concerning which there was no evidence presented.

On the date in question, Agent Jennings freely drove through a gate on business premises, to a vacant area some distance from the building. Defendant asserts that the business was not "open to the public;" however, regardless of his status as a trespasser on the premises, the truck leasing business could not have had a legitimate expectation of privacy at the moment the unloading of the truck began. Although a warrant may be necessary to search portions of commercial premises not open to the public, per See v. City of Seattle, 387 U.S. 541, 545 (1967), in this case there was no active search

---

[3] The court acknowledges Mr. Sumerecki's testimony about Rottweilers on the premises, but notes that there was no testimony establishing that guard dogs were present in April 2005.

[4] The court admitted a photograph of signs indicating other activities on the premises, but will disregard such evidence, as it notes that the photographs were taken some months after the April date.

undertaken by Agent Jennings.  Testimony was offered to show that broken trucks would normally call ahead of arrival for service at defendant Stockton's business, but there was no conclusive proof that members of the public would not be able to obtain service from the business if requested.  Agent Jennings merely drove through the gate of business premises, sat in his car, and reported his observations to his superior.  This activity did not violate the Fourth Amendment, and neither the observations nor evidence seized will be suppressed.

## CONCLUSION

For the reasons given above, defendants' motion is hereby DENIED.

IT IS SO ORDERED.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  September 2, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on September 2, 2005, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk